## Commonwealth ex rel. v. Corrigan

*Ward F. Clark*, for plaintiff.
*Thomas T. Corrigan, Jr.*, in propria persona.

GARB, J., August 20, 1976—This is an action in mandamus in which plaintiff, the District Attorney of Bucks County, seeks an order to compel defendant, the Controller of Bucks County, to authorize the payment to plaintiff of the annual salary of $44,000 under and pursuant to ordinance no. 39 enacted by the Commissioners of Bucks County on July 20, 1976. A complaint has been filed to which defendant has filed an answer and new matter and a reply to that new matter has been filed by plaintiff. The pleadings being closed, plaintiff has filed a motion for judgment on the pleadings which has

been argued before the undersigned and which will be decided herein.

It is established on this record that plaintiff was appointed district attorney on March 4, 1972, by the judges of this court to fill an unexpired term of the incumbent who had resigned. Plaintiff was duly elected district attorney at the general election of November 7, 1973, to serve a four-year-term commencing on January 1, 1974, and terminating on December 31, 1977, and is presently serving in that capacity. Defendant is the duly elected Controller of the County of Bucks.

On June 24, 1976, the Governor of Pennsylvania signed a bill into law which, in relevant part, constituted an amendment to section 1401 of The County Code, Act of August 9, 1955, P.L. 323, sec. 1401, 16 P.S. §1401, this Act of Assembly being denominated Senate Bill No. 572. Under the provisions of that amendment and under date of June 24, 1976 plaintiff did deliver a letter to the chairman of the board of county commissioners of this county recommending that the office of district attorney be made a full-time position under and pursuant to the provisions of this amendment. Under letter of June 9, 1976[1] the President Judge of this judicial district did transmit to the chairman of the county board of commissioners a recommendation that the present district attorney be given full-time status. As a result of the foregoing recommendations and specifically on July 20, 1976, the board of county commissioners did enact the aforesaid ordinance no. 39 implementing the aforesaid amendment to The

---

1. At a time when, apparently, the amendment had been passed by both houses of the legislature and at a time when, apparently, the President Judge was under the mistaken impression that the bill had been signed into law.

County Code and providing that the district attorney's position shall be a full-time one with the commensurate salary of $1,000 less than the compensation received by the judges of the Courts of Common Pleas, to wit, $44,000.

Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a clear legal right in plaintiff, corresponding duty in defendant, and a want of any other appropriate and adequate remedy: Eckert v. Buckley, 23 Pa. Commonwealth Ct. 82, 350 A. 2d 417 (1976); Suburban Group, Inc. v. Gittings, 22 Pa. Commonwealth Ct. 295, 348 A. 2d 490 (1975); Board of Supervisors of North Coventry Township v. Silver Fox Corp., 10 Pa. Commonwealth Ct. 646, 312 A. 2d 833 (1973); McIlvaine v. Pennsylvania State Police, 454 Pa. 129, 309 A. 2d 801 (1973), and Unger v. Hampton Township, 437 Pa. 399, 263 A. 2d 385 (1970). No one contests the availability of a mandamus procedure to require defendant controller to authorize the payment of this salary to the district attorney, assuming that plaintiff is entitled to such salary. The question for decision herein is whether the district attorney is legally and constitutionally entitled to the salary he claims under the amendment to The County Code and the implementing ordinance of the board of county commissioners.

The narrow question for disposition is whether article III, sec. 27, of the Pennsylvania Constitution prohibits the district attorney from receiving this increase in salary during his present tenure in office. The constitutional provision in extremely brief and pithy terms provides as follows:

"No law shall extend the term of any public of-

ficer, or increase or diminish his salary or emoluments, after his election or appointment."

There is no question that the district attorney is a public officer. The office of district attorney is provided for in Article IX, sec. 4, of the Constitution in which county officers are enumerated, including the district attorney, and he, therefore, is denominated a public officer; in point of fact, a constitutional one. Therefore, it is clear that, without more, his salary may not be increased by any law during the time of his incumbency in his present term of office.

The first question for disposition is whether his salary has been increased by "a law." What constitutes "a law" for purposes of this provision of the Constitution was defined in Baldwin v. City of Philadelphia, 99 Pa. 164 (1881), in construing the exact same provision from the Constitution then in effect. It was held therein that a law for this purpose has a fixed and definite meaning. In its general sense, it imports "a rule of action." In this particular sense, it means " 'a rule of civil conduct, prescribed by the supreme power in the state, commanding what is right, and prohibiting what is wrong.' " A law is an emanation from the supreme power, and cannot originate elsewhere. An ordinance of Philadelphia City Council increasing the salary of plaintiff therein[2] was held not to be a law and, therefore, not within the constitutional prohibition. It was held to be a mere local regulation for the City of Philadelphia. The prescription was held to mean that the General Assembly shall not pass such a law increasing the salary of a public officer:

---

2. The Chief Commissioner of Highways for the City of Philadelphia.

Baldwin v. City of Philadelphia, supra. The same decision was reached regarding the increase of the compensation of the County Treasurer by the County Commissioners of Crawford County in County of Crawford v. Nash, 99 Pa. 253 (1881). Therein it was held that the act or resolution of the county commissioners did not constitute a law under the purview of this section of the Constitution. In McCormick v. Fayette County, 150 Pa. 190, 24 Atl. 667 (1892), it was held, for the same reason, that the resolution of the County Commissioners of Fayette County increasing the compensation of the county sheriff was not in violation of this constitutional prescription. See also Davis v. Homestead Borough, 47 Pa. Superior Ct. 444 (1911); Sefler v. McKees Rocks Borough, 72 Pa. Superior Ct. 81 (1919), holding that the prohibition of this section of the Constitution refers to acts of the legislature and not to ordinances of municipalities, and finally Emmaus Taxpayers' League v. East Penn Union School District, 12 D. & C. 2d 103 (1957).

The purpose in placing limitations upon legislative interference with the compensation received by a public officer for the duties normally incident to the office was to eliminate political or partisan pressure upon the incumbents of office after they have been elected or appointed: Hadley's Case, 336 Pa. 100, 6 A. 2d 874 (1939). The prescription of this provision of the Constitution is an inexorable one and may not be avoided by indirection: Sellers v. Upper Moreland Township School District, 385 Pa. 278, 122 A. 2d 800 (1956), and Goodwin v. Allegheny County, 182 Pa. Superior Ct. 28, 125 A. 2d 640 (1956). One question, therefore, in terms of determining whether the district attorney's salary has been increased in violation of this constitu-

tional provision is whether that has been directly or indirectly by an act of the legislature, to wit, by the enactment of "a law."

The act of assembly in question provides that the commissioners of any county of the third or fourth class may by ordinance fix the services of the district attorney at full time. The president judge of the court of common pleas of the judicial district and the district attorney may make recommendations at any time to the county commissioners on the advisibility of full-time service by the district attorney but those recommendations shall not be binding on them. When the determination by the county commissioners to require a full-time district attorney becomes effective and operative, the district attorney shall be compensated at $1,000 lower than the compensation paid to a judge of the court of common pleas. The action, once taken, by the county commissioners may not be changed except by referendum of the electorate of the said county. Once such decision is made, the district attorney shall devote full time to the office. While in office the district attorney may not derive any other income as a result of his necessary legal education and background from any source including, but not limited to, income derived from legal publications or other publications dealing with matters related to the office of district attorney, lectures, honorariums, profit shares or divisions of income from any firm with which the district attorney was associated prior to election. In addition, the district attorney shall not engage in any private practice and must be completely disassociated from any firm with which the district attorney was affiliated prior to election, nor shall the district attorney accept any civil or criminal cases after being elected to the office. Furthermore, the district attorney

shall be subject to the Canons of Ethics as applied to judges in the courts of common pleas of this Commonwealth insofar as such canons apply to salaries, full-time duties and conflict of interest. Finally, as relevant hereto, the act of assembly provides that where no such determination to require a full-time district attorney is made, the district attorney shall be permitted to have an outside practice, and his salary shall be as set forth by law.[3]

As we view it, the effect of this act of assembly is, essentially, to create two classes of district attorney in counties of the third and fourth class which did not previously exist. Those two classes, obviously, are full-time and part-time district attorneys. Considering the increasing responsibilities of the office of district attorney because of the complicating nature of the developing sociology of the larger counties, particularly those immediately next to large urban centers, involving the increase in crime and the escalating complexities of the criminal law, the legislature has, most appropriately, addressed itself to a problem of great seriousness. The time of the part-time district attorney in a county such as Bucks, with a population of approximately 420,000 people, immediately next to Philadelphia, of divergent demography, ranging from an urban to a suburban to a rural county, is long since gone. In order to accomplish this, it may be argued that the legislature has taken a circuitous route in order to increase the compensation of a district attorney in office trying by that circuitry to avoid encumbrance of this section of the Constitution. However, we do not view it that way. Although the legislature has fixed the salaries of district attorneys, it is nowhere

3. Although not so provided in the Constitution nor dignified by any act of assembly, it has always been accepted that a district attorney may engage in outside law practice.

mandated that it do so. The legislature may impose that duty upon the several boards of county commissioners. Rather than doing that, the legislature has vested in the county commissioners the option to determine the requirements of the office of district attorney, based upon local need, and considering the recommendations of the district attorney and the president judge. Where, in the wisdom of the county commissioners, the need for a full-time district attorney is not demonstrated, the district attorney may continue, as heretofore, as a part-time functionary receiving the salary as set forth by the legislature in the Act of November 1, 1971, P.L. 496 (No. 113), sec. 5, 16 P.S. §11011-5. Where, however, the county commissioners determine that local needs dictate a full-time prosecutor, the county commissioners are vested with the discretion to make that determination and, upon so doing, the salary of the district attorney is commensurately increased by virtue of this act of assembly.

Of greater importance, where the duties of a public officer are significantly increased, an increase in compensation is not prohibited by this section of the Constitution. See Quick et al., Commissioners v. Monroe County, 41 D. & C. 664 (1941), and Davis v. Lawrence County, 9 D. & C. 374 (1926). While conceivably it may be argued that this act of assembly does not increase the duties or responsibilities of the district attorney, it is clear that the act of assembly materially changes the nature of that office and, therefore, the parameters of the qualifications for said office. While it is true that district attorneys are constitutional officers, it is likewise clear that nowhere in the Constitution are his duties prescribed and, therefore, the legislature may regulate the performance of such duties:

Dauphin County Grand Jury Investigation Proceedings (No. 3), 332 Pa. 358, 2 A. 2d 809 (1938). The duties of the district attorney are briefly and concisely set forth in section 1402 of The County Code, the Act of August 9, 1955, P.L. 323, 16 P.S. §1402. This act of assembly provides for new and more stringent qualifications and restrictions on the person holding this high office. Most importantly, it provides, essentially, that he may receive no outside legal related income if he fills this office on a full-time basis. The quid pro quo from the district attorney is his full time and undiminished attention to the duties of district attorney, at the same time abjuring outside income. In so providing, the legislature has mandated that he shall give his undivided attention to his office, shall receive no other law-related compensation or emoluments, related or unrelated to the district attorney's office, and has, thereby, imposed upon him restrictions significantly extended beyond those which a part-time district attorney has. Recognizing that the salary of the district attorney may constitutionally be increased where the duties and responsibilities of his office are significantly increased, it is entirely logical and consistent that his salary may likewise be increased where the restrictions upon the district attorney in fulfilling that office have been made more stringent. Where the quid pro quo for an increase in salary may be found from an increase in his duties and responsibilities, we believe that there may be an equally compelling quid pro quo for an increase in salary where he has accepted significantly more severe restrictions upon his outside activities, in particular, upon a significant diminution in his outside earnings and activities. The quid pro quo imports justification for an increase in sal-

ary whether it be by virtue of an increase in his duties and responsibilities or a significant decrease in his opportunities for, and receipt of, outside income. It is clear from this that the spirit and underlying philosophy of this provision of the Constitution is not violated, as there is no occasion for political or partisan pressure upon the district attorney in return for the implementation of this act. See Hadley's Case, supra. Therefore, we conclude that the action of the board of county commissioners in enacting ordinance no. 39 does not constitute a violation of Article III, sec. 27, of the Constitution.

## ORDER

And now, August 20, 1976, it is hereby ordered, directed and decreed that judgment on the pleadings shall be entered for plaintiff and against defendant and defendant shall be directed to authorize the payment to plaintiff of his salary in the sum of $44,000 per annum payable on equal installments on each of the days determined by the county for payment of county employes.